**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MELEANIE HAIN et al.,** | : | |
| | : | **Civil Action No. 1:08-CV-2136** |
| **Plaintiffs** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| | : | |
| **MICHAEL J. DeLEO et al.,** | : | |
| | : | |
| **Defendants** | : | |

<u>**MEMORANDUM**</u>

Before the Court is Defendants Michael J. DeLeo ("DeLeo"), Office of the Lebanon

County Sheriff, and Lebanon County's motion to dismiss the Plaintiffs' complaint under Rule

12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 7.)  The motion is ripe for

disposition.  For the reasons that follow, the motion will be granted.

**I.      BACKGROUND**

    **A.  Factual Background**[1]

On or about September 11, 2008, Meleanie Hain ("Hain") attended her daughter's soccer

game at Optimist Park, a public park in Lebanon County Pennsylvania.  (Doc. No. 1 ¶ 11.)

While in attendance, Hain openly carried a handgun secured in a holster on her hip.  (<u>Id.</u> ¶ 15.)

Hain was approached by Charlie Jones, a coach on one of the teams, who informed her that other

parents watching the game were concerned about the firearm.  (<u>Id.</u> ¶ 16.)  Although she was not

doing anything improper with the handgun, Hain subsequently moved to another part of the

field.  (<u>Id.</u> ¶ 17.)  Hain approached the coach after the game to explain why she was openly

---

[1]      The following facts are taken from the Plaintiffs' complaint and are accepted as true for purposes of the
Court's disposition.  (Doc. No. 1.)

carrying her handgun and to assuage any fears or doubts he had.  (Id. ¶ 18.)  Jones did not allow

Hain a chance to explain, as he allegedly began to make "wild, false accusations" about Hain's

"intentions of violence . . . ."  (Id. ¶ 19.)  After leaving the game, Hain received an email

message from Nigel Foundling, director of the youth soccer league, instructing her to refrain

from carrying a firearm to any league soccer game in the future.  (Id. ¶¶ 20-21.)  Hain asked

Foundling for more information, but it was never provided.  (Id. ¶¶ 22-23.)

On or about September 20, 2008, Hain received an official notice revoking her license to

carry concealed firearms from Defendant DeLeo, the sheriff of Lebanon County.  (Id. ¶¶ 7, 26.)

The notice solely referenced the incident in Optimist Park, noting that unidentified individuals

were upset about Hain's open carrying of the handgun under the circumstances.  (Id. ¶ 28.)

Hain was provided no notice or hearing prior to the revocation of her license.  (Id. ¶ 27.)  After

inquiring about the revocation, a deputy in the Sheriff's Office informed Hain that her license

would be reinstated if she would agree to conceal her firearms in the future.  (Id. ¶ 30.)  Hain

refused the deputy and filed a formal appeal of the license revocation on September 22, 2008.

(Id. ¶ 31.)  A hearing was held before Court of Common Pleas Judge Robert J. Eby, who

overturned DeLeo's revocation and reinstated Hain's license.  (Id. ¶¶ 32-33.)

**B.  Procedural Background**

Meleanie and Scott Hain filed their complaint in this Court on November 24, 2008,

alleging five causes of action, including: civil rights violations under the First, Second, Fourth,

Fifth, and Fourteenth Amendments (Count I); civil rights violations against Lebanon County and

its Sheriff's Office under Monell (Count II); conspiracy to violate civil rights (Count III); abuse

of process and malicious prosecution (Count IV); and loss of consortium (Count V).  (Doc. No.

1.)  On November 16, 2009, Plaintiffs' counsel filed a suggestion of death for both Plaintiffs (Doc. No. 36), and a notice of voluntary dismissal of any claims made by Scott Hain (Doc. No. 37).  Subsequently, citing the tragic murder suicide of Scott and Meleanie Hain, Plaintiff's counsel moved to dismiss the claims of Scott Hain (Doc. No. 37) and to substitute Jenny Stanley and Duane Gillete as administrators of Meleanie Hain's estate (Doc. No. 39), which the Court granted (Doc. No. 41).

### C.  Standard of Review

Defendants have challenged Plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In analyzing a complaint under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  The plaintiff must provide more than a formulaic recitation of a claim's elements that amounts to mere labels and conclusions.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss . . . ."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Accordingly, "to prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler, 548 F.3d at 210.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## II.    DISCUSSION

Defendants have raised several arguments challenging Plaintiffs' various claims.[2]  The Court will review these challenges as argued by the parties.

### A.  Second Amendment

The parties largely focus on Plaintiffs' claim that Defendant DeLeo violated Hain's Second Amendment[3] rights by his revocation of her license to carry firearms ("LCF").  (Doc. No. 1. ¶ 39.)  Pennsylvania's Uniform Firearms Act ("UFA"), see 18 Pa. Cons. Stat. Ann. § 6101 *et. seq.*, regulates the possession and use of firearms in Pennsylvania.  The UFA generally requires a LCF to carry a firearm in a vehicle or concealed in public:

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

Id. § 6106.[4]  There are several exceptions to this general requirement, including for transportation of the firearm to and from: its place of purchase, see id. § 6106(b)(8); target

---

[2]  In their brief in opposition, Plaintiffs have voluntarily conceded several of their claims: (1) punitive damages against the municipal defendants and DeLeo in his official capacity; (2) common law negligence; (3) any based on the First and Fifth Amendments; and (4) malicious prosecution.  (Doc. No. 26 at 9.)  Accordingly, these claims will be dismissed.

[3]  The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. Amend. II.

[4]  Though primarily dealing with concealed firearms, the statute does contain a specific provision requiring a license for all public carrying of firearms in Philadelphia, which is not at issue in this case.  See 18 Pa. Con. Stat. Ann. § 6108.

practice facility, see id. § 6106(b)(4); or hunting areas if the individual is licensed to hunt, see id. § 6106(b)(9).  Plaintiffs' claim that DeLeo's revocation violated Hain's Second Amendment rights is based primarily on the Supreme Court's opinion in District of Columbia v. Heller, 128 S. Ct. 2783, 2821-22 (2008), which held that the Second Amendment conferred an individual right to keep and bear arms.  The Court declined to define the exact contours of this right, but found that the Second Amendment at least "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  Id. at 2821.  The Court also highlighted a non-exhaustive list of presumptively lawful regulatory measures as examples of potential limitations on the right:

> Like most rights, the right secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.  For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 2817 (internal citations omitted); see also McDonald v. City of Chicago, 130 S. Ct. 3020, 3047 (2010) ("[I]ncorporation does not imperil every law regulating firearms.").

As Defendants argued extensively in their briefs on this motion, Heller dealt with a statute in the District of Columbia and did not necessarily apply to the applicable state actors and laws in this case.  Since the briefs were filed on the present motion, however, The Supreme Court has held that "the Due Process Clause of the Fourteenth Amendment incorporates the

Second Amendment right recognized in <u>Heller</u>" such that it applies equally to the federal government and the States.  <u>McDonald</u>, 130 S. Ct. at 3050.  Accordingly, Defendants' arguments that <u>Heller</u> is inapplicable to state or local governments must be rejected.[5]

This does not end the inquiry, however.  The Defendants have also argued that DeLeo is entitled to qualified immunity on this claim.  Defendants contend there is no constitutional violation because, considering the discussion in <u>Heller</u>, "the Second Amendment does not grant a right to carry concealed weapons," and Hain's firearm license was not required to openly carry weapons.  (Doc. No. 14 at 4-5.)  Defendants also argue that any Second Amendment right DeLeo may have violated was not clearly established at the time of the events at issue.  (Doc. No. 26 at 10.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  In <u>Saucier v. Katz</u>, the Supreme Court set out a sequential two-step analysis for claims of qualified immunity: (1) the court must decide whether the facts alleged or shown make out a violation of a constitutional right, and (2) the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct.  <u>Pearson</u>, 129 S. Ct. at 815-16 (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  The Supreme Court has recently relaxed the requirement that <u>Saucier</u>'s two steps be analyzed in sequential order.  <u>Id.</u> at 818.

---

[5] A provision incorporated by the Fourteenth Amendment applies to both state and local governments.  <u>See</u> <u>Oliver v. United States</u>, 466 U.S. 170, 187 n.3 (1984) ("By their terms, the provisions of the Bill of Rights curtail only activities by the Federal Government, but the Fourteenth Amendment subjects state and local governments to the most important of these restrictions.") (internal citations omitted).

There is some support for Defendants' argument that the Second Amendment is not implicated by revocation of Hain's LCF. By its terms, the UFA does not regulate or restrict an individual's right to defend "hearth and home," or even to carry firearms openly in most public places in the Commonwealth. See 18 Pa. Con. Stat. Ann. § 6106(a)(1) (excluding persons in their "place of abode or fixed place of business" from coverage under the statute). The UFA also contains exceptions for transportation of firearms from the home in a vehicle for common legitimate purposes. See id. §§ 6106(b)(4); 6106(b)(9) (excepting coverage for persons engaged in target shooting and hunting). Additionally, the Supreme Court in Heller explicitly referenced prohibitions on concealed carrying of firearms as an example of regulations that have traditionally been considered lawful under the Second Amendment. See Heller, 128 S. Ct. at 2816; see also United States v. Masciandaro, 648 F. Supp. 2d 779, 790 (E.D. Va. 2009) ("Heller's approval of concealed weapons bans provides further support for rejecting Masciandaro's as-applied challenge, as carrying a loaded weapon in a motor vehicle—an act which, by definition, is almost always outside the view of those nearby—presents the sort of compelling safety risk more adequately resolved by legislation than judicial *ipse dixit*."). Despite this, the Court need not finally determine at this time whether DeLeo violated Hain's Second Amendment right to keep and bear arms, as it is clear that he is entitled to qualified immunity based on the second prong of the Saucier analysis.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). This analysis must be conducted in light of the specific context of the case and "turns on the

'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Pearson, 129 S. Ct. at 822 (quoting Wilson, 526 U.S. at 614). "[I]f the law did not put the officer on notice that his conduct would be clearly unlawful, [dismissal] based on qualified immunity is appropriate." Bayer v. Monroe Cnty. Children and Youth Serv., 577 F.3d 186, 193 (3d Cir. 2009) (quoting Saucier, 533 U.S. at 202). Accordingly, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Egolf v. Witmer, 526 F.3d 104, 110-11 (3d Cir. 2008) (citing Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005)).

Plaintiffs argue that Heller was decided approximately four months before DeLeo revoked Hain's license, which makes Hain's rights under the Second Amendment clearly established. (Doc. No. 26 at 19.) But, as the discussion above demonstrates, Heller did not settle the bounds of the Second Amendment right to keep and bear arms. Indeed, the Supreme Court itself plainly acknowledged that significant uncertainty in the law would remain after Heller:

> [S]ince this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field, any more than Reynolds v. United States, 98 U.S. 145, (1879), our first in-depth Free Exercise Clause case, left that area in a state of utter certainty. And there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us.

Heller, 128 S. Ct. at 2783. Even now many questions remain as to the scope of the Second Amendment. As the Third Circuit has recently cautioned, "Second Amendment doctrine remains in its nascency, and lower courts must proceed deliberately when addressing regulations unmentioned by Heller." United States v. Marzzarella, 614 F.3d 85, 101 (3d Cir. 2010).

Plaintiffs' argument must therefore be rejected; there is no question that the clearly established legal rules confronting DeLeo would not have put him on notice that his conduct violated the Second Amendment. As a local official, it would not have been clear to him at the time that his actions implicated Plaintiff's Second Amendment right, which was only just recently incorporated by the Supreme Court. Indeed, it was not and is still not clear that the Second Amendment right set out in <u>Heller</u> is implicated by the revocation of a license to carry concealed weapons in public. Even interpreting the complaint to allege that the revocation of Plaintiff's permit in retaliation for Plaintiff's exercise of her Second Amendment rights is a distinct Second Amendment violation, qualified immunity applies to Plaintiff's claims against Sheriff DeLeo. Accordingly, the Court finds that DeLeo is entitled to qualified immunity; the Defendants' motion to dismiss will be granted on this claim.

## B. Due Process

Plaintiffs' argue that the procedure used to revoke her license to carry firearms violated the Fourteenth Amendment, which forbids a state from depriving persons of life, liberty, or property without due process of law.

### 1. Procedural Due Process

When a plaintiff sues a state actor under § 1983 for failure to provide procedural due process, the court must employ a "two-stage analysis, inquiring (1) whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000) (internal citations and quotations omitted).

Here, Plaintiffs do not appear to allege or argue that any deprivation of a liberty interest occurred, so the only issue under the first prong of the procedural due process inquiry is whether Hain's LCF was a cognizable "property" interest protected by the Fourteenth Amendment. To make this determination, the Court must look to Pennsylvania law to assess whether Hain can show a legitimate claim of entitlement to the LCF:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Burns v. PA Dep't of Corr., 544 F.3d 279, 286 (3d Cir. 2008) (quoting Board of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). In a similar licensing context to the present case, the Third Circuit held that one factor to consider in determining whether an individual has a "legitimate claim of entitlement" is the discretion invested in state officials overseeing the licensing decision. See Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir. 1991), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 400 (3d Cir. 2003). In Midnight Sessions, the court considered whether the plaintiffs had a cognizable property interest in receiving a potential license to operate a dance hall. Id. The statute at issue prohibited issuance of these licenses pending city review to determine that "the facility complies with 'all laws, ordinances, health and fire regulations, applicable thereto, *and is a safe and proper place* for the purpose for which it shall be used." Id. Given the implicit discretion in the "safe and proper place" language, the court determined the plaintiffs could not legitimately claim entitlement to issuance of the license. Id.

In this case, the UFA carries very similar discretionary language in its licensing

requirements.  To obtain a LCF, an individual must submit an application form provided by the Pennsylvania State Police to the sheriff of his or her county.  18 Pa. Cons. Stat. Ann. § 6109(c). Before granting a license, the sheriff must: "(1) investigate the applicant's record of criminal conviction; (2) investigate whether or not the applicant is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year; (3) investigate whether the applicant's character and reputation are such that the applicant will not be likely to act in a manner dangerous to public safety; (4) investigate whether the applicant would be precluded from receiving a license under [other subsections of the UFA]; and (5) conduct a criminal background, juvenile delinquency and mental health check . . . ."  Id. § 6109(d).  The sheriff issues the license after the investigation unless "good cause" exists to deny it.  Id. § 6109(e). Beyond the good cause determination, subsection (e)(1) of Section 6109 provides a list of certain categories of people to whom the sheriff may not issue a license, such as those who have been convicted of certain crimes or who are addicted to drugs or alcohol.  See id. § 6109(e)(1)(ii)-(vii).  Subsection (e)(1) also prohibits issuance of a LCF to "an individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety."  Id. § 6109(e)(1)(i).  Even after a LCF is issued, the sheriff retains discretion to revoke it for good cause.  Id. § 6109(i).  The sheriff also must revoke the LCF if the license holder subsequently falls into any of the proscribed categories in subsection (e)(1) after issuance of the license.  Id.  Accordingly, the UFA invests the sheriff with significant discretion in granting or revoking a LCF based on good cause and character determinations.

Beyond the plain language of the statute, Pennsylvania court decisions analyzing the UFA have also held that Section 6109(e) was intended to invest the sheriff with significant

discretion to exercise judgment in issuance and revocation of an individual's LCF. See Harris v. Sheriff of Delaware Cnty., 675 A.2d 400, 403 (Pa. Commw. Ct. 1996) ("[T]his Court has held that the legislature intended in Section 6109 of the Act to confer discretion on sheriffs, empowering them to exercise judgment in applying the Act's standards to determine if applicants should be licensed. That principle applies also to the sheriff's determination of 'good cause' for revocation."); see also Morley v. City of Philadelphia Licenses & Inspections Unit, 844 A.2d 637, 640-41 (Pa. Commw. Ct. 2004) (same). This issue was also discussed by the court in Potts v. City of Philadelphia, 224 F. Supp. 2d 919 (E.D. Pa. 2002),[6] which dealt with a similar set of claims as those raised in the present case. In Potts, the plaintiff's LCF was revoked after he was arrested for recklessly endangering another person. Id. at 938. The court held that:

> Section 6109 of the Uniform Firearms Act confers broad discretion to the City in both issuing and revoking firearm licenses. Given [the] breadth and nature of the discretion conferred to the City in issuing and revoking firearm licenses under the Uniform Firearms Act. . . , I conclude that Potts did not have a protected property interest in his gun permit for purposes of procedural due process.

Id. at 942. The Court finds Potts persuasive, considering the plain language of the statute and authority discussed above. Accordingly, the Court must reject Plaintiffs' interpretation of Section 6109. The UFA clearly provides the sheriff with broad discretion in exercising his authority to issue and revoke the LCF, eliminating Hain's claim of entitlement. Therefore, the LCF is not encompassed within the Fourteenth Amendment's protection of property for purposes of procedural due process.

Even assuming *arguendo* that Hain did have a protected property interest in the LCF, the

---

[6] As Plaintiffs argue, the court's Second Amendment discussion in Potts has been effectively abrogated by the Supreme Court's rulings in Heller and McDonald. Despite this, the court's analysis of Potts's procedural and substantive due process claims will be considered as persuasive authority.

Court finds that the procedures available to Hain provided her with due process of law. The UFA requires that the sheriff provide notice and a list of reasons for revocation of the license in writing. 18 Pa. Cons. Stat. Ann. § 6109(j). After receiving this notice, the individual must surrender the license to the sheriff within five days, but can then appeal the sheriff's determination to the Court of Common Pleas. Id.

In accordance with Section 6109(i), Hain received the following notice[7] of the revocation addressed to her on or about September 20, 2008:

> On September 11, 2008 you were observed at Optimist Park in Lebanon. At that particular time you were carrying a weapon openly in a belt holster. Unfortunately, some of the individuals at the Optimist Park were upset. Consequently, you are required to surrender your license, as indicated in the following paragraphs.
>
> According to [Section 6109] of the Uniform Firearms Act, you are required to surrender your license to the issuing authority.
>
> You are required to surrender the license to the Lebanon County Sheriff's Office within five days of receipt of this letter or be guilty of a summary offense.
>
> Section 6109, (e)(1)(i) [sic] reveals that "an individual whose character and reputation is such that the individual would be likely to act in a dangerous manner to public safety," shall not be licensed.

(Doc. No. 7-1, Ex. A.) Hain then filed a formal appeal on September 22, 2008. (Doc. No. 1. ¶ 31.) Less than a month later, on October 14, 2008, a hearing was held at the Court of Common Pleas on the appeal and Hain's license was reinstated. (Doc. No. 1 ¶¶ 32-33.)

Plaintiffs' argue that this process was not sufficient because Hain was not given a pre-

---

[7] Though not attached to the complaint, the Court may consider the notice of revocation attached to the Defendants' motion to dismiss because its authenticity is not disputed and Plaintiffs' claims are partly based on the document. See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

deprivation hearing.[8]  (Doc. No. 26 at 11.)  In analyzing whether a pre-deprivation hearing is

required, the Court must consider three factors:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  It is clear that there exists a significant private

interest in carrying concealed firearms on the person or in one's vehicle, particularly for

purposes of self defense, that are affected by a sheriff's revocation of a LCF.  However, even

without the LCF, an individual may keep firearms in a home or place of business, openly carry

firearms in most areas, and transport firearms for a variety of legitimate uses.  See 18 Pa. Cons.

Stat. Ann. § 6106.  Accordingly, a LCF does not implicate an individual's shelter, income, or

employment, which categories would favor a pre-deprivation hearing.  See Potts, 224 F. Supp.

2d. at 943 (citing Goldberg v. Kelly, 397 U.S. 254, 262 (1970)).  In contrast, the Court finds the

state interest in protecting the public safety through the enforcement of licensure requirements is

compelling.  Though a pre-deprivation hearing may lessen the risk of erroneous deprivation in

some cases, it would significantly burden the state interest in quickly removing licenses from

individuals who prove to be dangerous after their license has been issued.  See Spinelli v. City of

New York, 579 F.3d 160, 170-71 (2d Cir. 2009).  Accordingly, after balancing and examining

the Mathews factors, the Court finds that the lack of a pre-deprivation hearing did not deny her

due process.  The prompt, post-deprivation hearing that Hain received satisfied due process.

---

[8]  Plaintiffs do not appear to allege or suggest that, in the absence of a pre-deprivation hearing, there are any
additional post-deprivation procedures that are necessary to comply with due process.

Considering the above, Plaintiffs have not been denied procedural due process; the Defendants' motion to dismiss will be granted on this claim.

## 2. Substantive Due Process

Plaintiffs next contend the complaint states a claim for violation of substantive due process. Plaintiffs' complaint and briefing on this issue are far from clear on many points. Plaintiffs assert in support of a substantive due process violation that "Defendants state no legitimate basis for the [LCF] seizure nor do they even attempt to explain away that seizure's intended impingement on Plaintiff's rights to openly carry." (Doc. No. 26 at 13.) It seems from this statement that Plaintiffs' substantive due process arguments may be an indirect means of asserting that DeLeo violated Hain's Second Amendment right to keep and bear arms. (Id.) To the extent Plaintiffs are attempting to raise such a duplicative claim under substantive due process standards, it would have to be rejected. See County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); see also Betts v. New Castle Youth Dev. Ctr., No. 09-3753, 2010 WL 3528902, at *8 (3d Cir. Sept. 13, 2010) (holding that plaintiff's substantive due process claims were foreclosed where "allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment"); Gardner v. Vespia, 252 F.3d 500, 503 (1st Cir. 2001) (holding that substantive due process was inapplicable where thrust of plaintiff's claim "is the infringement upon his right to bear arms," as "Second Amendment jurisprudence provides an adequate answer to this challenge").

Plaintiffs also argue that there was no legitimate basis for the LCF revocation and they contend Hain was "deprived of a protected property interest by government action that was so egregious as to be considered arbitrary in the constitutional sense or shocking to the conscience." (Doc. No. 26 at 13.)  Defendants, again relying largely on the analysis in Potts, argue that the LCF does not constitute a property interest cognizable under substantive due process.  (Doc. No. 14 at 13-14.)

Substantive due process contains two separate analytical paths depending on whether the government action at issue is legislative or non-legislative.  See Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139 (3d Cir. 2000).  This case involves non-legislative or executive acts, which typically apply to one or a limited number of persons.  Id. at 139 n.1.  For such acts, the Fourteenth Amendment primarily protects individuals from the arbitrary exercise of power by government officials through procedural due process, as discussed above.  Id. at 139.  The Third Circuit has recognized, however, that "a non-legislative government deprivation 'that comports with procedural due process may still give rise to a substantive due process claim upon allegations that the government deliberately and arbitrarily abused its power.'"  Id. (quoting Independent Enters. Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 (3d Cir. 1997)).  In order to proceed on this claim, "'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'"  Hill v. Borough of Kutztown, 455 F.3d 225, 235 n.12 (3d Cir. 2006) (quoting Nicholas, 227 F.3d at 139-140)).  Unlike procedural due process, reference to state law does not control whether a property interest is protected for purposes of substantive due process. Id.  This distinction exists because "not all property interests worthy of procedural due process

protection are protected by the concept of substantive due process," which requires that "'a plaintiff must have been deprived of a *particular quality* of property interest.'" Nicholas, 227 F.3d at 140 (quoting DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir. 1995)). Therefore, to qualify for substantive due process protection, the property interest being deprived must be constitutionally fundamental. Id. at 142. If the property interest falls into this limited category, substantive due process protects an individual from government deprivation of that interest by means of arbitrary or egregious conduct which "shocks the conscience," regardless of the procedures used. See id.; see also Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (citing United Artists Theatre Circuit, Inc., 316 F.3d at 399).

Defendants argue that "Plaintiffs provide neither a legal argument nor a foundation upon which an argument can even be forwarded that a license to carry firearms concealed on or about one's person is a fundamental property or liberty interest for purposes of substantive due process." (Doc. No. 31.) The Court must agree that Plaintiffs appear to mostly ignore this complicated issue, focusing instead on the appropriate "shocks the conscience" standard of review. (See Doc. No. 26 at 13.) Whether the government conduct at issue meets this standard is a secondary question, however, because "[i]f the interest is not 'fundamental,' . . . the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process." Nicholas, 227 F.3d at 142.

On the issue of whether the LCF is a fundamental property right, Plaintiffs merely state, without analysis, that "ownership of property is considered to be a protected property interest." (Doc. No. 26 at 13.) Beyond their failure to explain what property ownership is impacted by a

LCF, Plaintiffs do not address the Third Circuit's longstanding limitation of qualifying property interests "to cases involving real property ownership," and its reluctance to expand this category. See Nicholas, 227 F.3d at 141. Indeed, courts in this circuit have rejected numerous attempts to extend the category of fundamental property interests beyond real property ownership. See, e.g., Gikas v. Wash. Sch. Dist., 328 F.3d 731, 736-37 (3d Cir. 2003) (holding no fundamental property interest in statutory veterans' employment preference); Independent Enters. Inc., 103 F.3d at 1178 (holding that lowest bidder in state process to award public contracts has no fundamental property interest in the contracts); Nicholas, 227 F.3d at 143 (holding that there is no fundamental property interest in tenured public employment); Ransom v Marrazzo, 848 F.2d 398, 411-12 (3d Cir. 1988) (rejecting claim that entitlement to water and sewer services is fundamental property right entitled to substantive due process protection); Reich v. Beharry, 883 F.2d 239, 245 (3d Cir. 1989) (finding that receipt of payment for professional services is not a fundamental property interest entitled to substantive due process protection); Holt Cargo Sys. Inc., v. Delaware River Port Auth., 20 F. Supp. 2d 803, 830 (E.D. Pa. 1998) (holding that there was no fundamental property interest in lost profits, loss of a bid, breach of a lease, breach of business relationships, or obtaining a maximum return on investment); see also Collins v. City of Harker Heights, 503 U.S. 115, 124 (1992) (admonishing courts to exercise "utmost care" when considering any expansion of substantive due process).

As discussed above, the LCF does not qualify as a property interest for purposes of procedural due process, and Plaintiffs have simply failed to offer any basis or authority to

suggest a different result under substantive due process analysis.[9]  The court in <u>Potts</u> addressed

this same issue and found that a LCF does not constitute the type of fundamental property

interest protected by substantive due process:

> The entitlement to a gun permit is more akin to the . . .
> non-fundamental type of property interest than ownership of real
> property.  I have no difficulty in concluding that the property interest
> alleged to have been infringed here is not the sort of fundamental
> interest entitled to the protection of substantive due process.

<u>Potts</u>, 224 F. Supp. 2d at 944 (internal quotations omitted).  The Court finds <u>Potts</u> persuasive.

Indeed, it is awkward to even consider the LCF as an interest in property.  It does not impact any

property rights or business interests.  It also clearly has no connection to real property, as has

been required by the Third Circuit in extending substantive due process protection.  Accordingly,

in the face of the above authority, and considering Plaintiffs' failure to offer any persuasive basis

to justify this claim, the Court will grant the motion to dismiss on this claim.

### C.  Equal Protection

In their brief, Plaintiffs claim that they have set forth a claim in their complaint for a

violation of equal protection (Doc. No. 26 at 14), citing to <u>Phillips v. County of Allegheny</u>, 515

F.3d 224 (3d Cir. 2008), in which the Third Circuit set out the standard for a "class of one" equal

protection claim:

> [T]o state a claim for "class of one" equal protection, a plaintiff must
> at a minimum allege that he was intentionally treated differently from

---

[9]  From their brief, Plaintiffs may be attempting to conflate the concept of a fundamental "property interest" with that of the interest implicated by the Second Amendment right to bear arms.  Of course, the Supreme Court has just held that this Second Amendment right is fundamental for purposes of incorporation on the States.  <u>McDonald</u>, 130 S. Ct. at 3050.  Such an argument would be misplaced, however, as this is a separate inquiry.  As discussed above, definition and protection of Hain's Second Amendment right to bear arms must be pursued under the standards applicable to that specific provision of the Constitution and not indirectly under substantive due process jurisprudence.

others similarly situated by the defendant and that there was no
rational basis for such treatment.

Id. at 243.  The court adopted the pleading framework set out by the Second Circuit in DeMuria

v. Hawkes, 328 F.3d 704 (2d. Cir. 2003), for "class of one" equal protection claims.  In that case,

the Second Circuit held the plaintiff is not required to "identify in a complaint actual instances

where others have been treated differently for purposes of equal protection" in order to state a

class of one claim.  Id. at 244.  Despite this, the Third Circuit explained that "[a]lthough

DeMuria does relax the 'class of one' pleading requirements by negating the need for specificity,

an allegation of an equal protection violation still must contain a claim that plaintiff has been

treated differently from others who are similarly situated."  Id.  Applying this standard, the court

found general accusations of improper or egregious conduct and reference to the Equal

Protection Clause were not sufficient to state a claim:

> Phillips' complaint does raise very general accusations. For example,
> Count One alleges claims against Allegheny County and the
> Allegheny County 911 Services.  In Paragraph 45 of Count One,
> Phillips alleges that "the actions of the defendant were intentional
> and/or constituted willful disregard, gross recklessness and deliberate
> indifference for Phillips' personal safety, well-being and right to life
> in derogation of the Due Process and Equal Protection clauses of the
> Fourteenth Amendment. . . . [T]hese general accusations and the
> invocation of the Equal Protection Clause are not enough. . . .
> Phillips' complaint does not contain specific allegations that he was
> treated differently.  The facts section of the Complaint . . . reveals the
> egregious actions of various individuals at the 911 computer center
> . . . . However, there is no allegation that these actions resulted in him
> being treated differently from other individuals . . . ."

Id. at 244-45.

In this case, even construing the complaint in a light most favorable to Plaintiffs, there

are no allegations stating or even fairly suggesting that Hain was treated differently from other

similarly situated individuals.  The allegations at most raise inferences about Defendants

misconduct (here without specific invocation of the Equal Protection Clause), and are very similar to those that the Third Circuit found insufficient to state a "class of one" claim in Phillips.  Accordingly, this claim will be dismissed.

### D.  Conspiracy

Defendants argue that Plaintiffs have failed to sufficiently state a claim under 42 U.S.C. Sections 1985 and 1986[10] in their complaint.[11]  Though Plaintiffs do not specify which part of Section 1985 they claim was violated, the language in the complaint tracks the latter part of Section 1985(2), (Doc. No. 1 ¶ 49), titled "Obstructing justice; intimidating party, witness, or juror," which provides a claim against private individuals where:

> two or more persons *conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory*, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . .

42 U.S.C. § 1985(2) (emphasis added).  It is also possible, as Defendants assume in their brief, that Plaintiffs are asserting the claim under the third clause of Section 1985, which provides in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class

---

[10]  42 U.S.C. § 1986 provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

[11]  Plaintiffs have essentially failed to respond to Defendants' arguments on these claims.  (See Doc. No. 26 at 18.)

> of persons of the equal protection of the laws, or of equal privileges
> and immunities under the laws . . . the party so injured or deprived
> may have an action for the recovery of damages occasioned by such
> injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Plaintiffs fail to state a claim under either of these sections. Though the statutory language is broad, both subsections of Section 1985 have been interpreted to require that a plaintiff allege "class-based, invidiously discriminatory animus" in order to state a claim. See, e.g., Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976) ("The latter half of [Section 1985(2)] guards against those obstructions of justice 'in any State or Territory' which have as their objects the denial of the equal protection of the laws. The complaint in the instant case does not allege a 'class-based, invidiously discriminatory animus.' Accordingly, the complaint failed to state a claim under the second half of 1985(2).") (internal citations omitted); Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) ("[B]ecause § 1985(3) requires the intent to deprive of equal protection, or equal privileges and immunities,' a claimant must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action in order to state a claim.") (internal quotations omitted). Plaintiffs have not alleged any such class-based discriminatory animus in the complaint, so these claims must be dismissed.

Even had Plaintiffs alleged the required class-based discriminatory animus, the Section 1985 claims would still fail. The Court finds that Plaintiffs have failed to adequately allege a conspiracy in the complaint. The alleged conspiratorial actors appear to be DeLeo, the Lebanon Sheriff's Office, Lebanon County, and Charlie Jones (a non-party actor). (Doc. No. 26 at 18.) One problem with this alleged conspiracy is that some of these entities and individuals, depending on the capacity in which they were acting, may be legally incapable of conspiring

together. See, e.g., Robinson v. Canterbury Village, Inc., 848 F.2d 424, 431-32 (3d Cir. 1988)

(holding that corporation and corporate officer sued in official capacity could not conspire with

each other); Doherty v. Haverford Twp., 513 F. Supp. 2d 399, 408-09 (E.D. Pa. 2007) (holding a

municipality and its officials are considered a single entity that cannot conspire with itself).

Even if these entities and individuals could legally conspire together, the allegations in the

complaint do not sufficiently show any concerted action between these individuals and entities.

The complaint contains "conclusory allegations of concerted action but is devoid of facts

actually reflecting joint action." Abbot v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998) (citing

Fries v. Helsper, 146 F.3d 452, 458 (7th Cir. 1998) ("[M]ere allegations of joint action or a

conspiracy do not demonstrate that the defendants acted under color of state law and are not

sufficient to survive a motion to dismiss. . . . Nothing in the complaint demonstrates the

existence of any joint action, concerted effort, or even a general understanding between Judge

Kinney and the defendants.").

Considering all of the above, the Court will dismiss the claims under 42 U.S.C. § 1985.

Additionally, "no claim can be maintained under Section 1986 unless a cause of action has been

established under Section 1985 . . . ." Robinson, 848 F.2d at 431 n.10. Accordingly, the Court

will also dismiss Plaintiffs' claims under Section 1986.

**E. Fourth Amendment**

The Fourth Amendment[12] protects against unreasonable searches or seizures. See, e.g.,

---

[12] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons or things to be

United States v. Sharpe, 470 U.S. 675, 683 (1985). The purpose of the Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Municipal Court of City and Cnty. of S.F., 387 U.S. 523, 528 (1967). Defendants argue that Plaintiffs have failed "to plead any facts or identify any theory of liability that implicates [Hain's] Fourth Amendment rights." (Doc. No. 14 at 16.) The Court agrees. Despite one conclusory allegation that Defendants disregarded Hain's right "to be protected in her person and property from unfounded, unilateral governmental prosecution, interference, seizure and intrusion" (Doc. No. 1 ¶ 40), there are no facts alleged in the complaint which demonstrate a cognizable search or seizure. Defendants hypothesized that Plaintiffs were attempting to state a claim for malicious prosecution under the Fourth Amendment, see Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003), but any such claim has since been withdrawn, (Doc. No. 26 at 9). There is also no argument in defense of the alleged Fourth Amendment violations in Plaintiffs' brief in opposition. Considering the above, the Court finds Plaintiffs have not alleged sufficient factual matter to show that any claim based on the Fourth Amendment is facially plausible; the Defendants' motion to dismiss this claim will be granted.

### F. Monell

Defendants argue that Plaintiffs have failed to state valid claims for municipal liability against DeLeo in his official capacity and the municipal defendants.[13] It is well established that

---

seized.

U.S. Const. amend. IV.

[13] Plaintiff has attempted to assert Monell claims against Sheriff DeLeo in his official capacity, Lebanon County, and the Lebanon County Sheriff's Office. It is not clear that all of these Defendants are proper parties for purposes of Section 1983 liability. See, e.g., Reitz v. County of Bucks, 125 F.3d 139, 148 (3d Cir. 1997); Duffy v. County of Bucks, 7 F. Supp. 2d 569, 578 (E.D. Pa. 1998). However, as the Court finds Plaintiffs have not adequately stated a municipal liability claim under Monell, the Court need not address this issue at this time.

municipalities cannot be liable for Section 1983 claims under a theory of *respondeat superior*. Monell v. Department of Social Servs., 436 U.S. 658, 691-94 (1978). Instead, a municipality can only be liable under Section 1983 where the municipality itself in some way causes the constitutional violation at issue. Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004). Accordingly, a plaintiff can establish municipal liability under Section 1983 by showing that a municipal policy or custom inflicted the injury. Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007). Where the policy at issue involves failing to train or supervise municipal employees, a plaintiff "must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

Defendants raise several issues with Plaintiffs' Monell claims, including several confusing aspects of the claim as plead in the complaint. (Doc. No. 14 at 25-28.) Plaintiffs allege that the municipal Defendants' policies, practices, and customs caused the violations of her rights, specifically referencing a failure to train as the suspect policy or practice. (See Doc. No. 1 ¶ 45.) Despite this, the complaint contains very few allegations concerning actions of municipal employees. Though ten John Doe Defendants are named and identified as individuals employed by the Defendants, (id. ¶ 10), there does not appear to be any allegations in the complaint describing what actions they took that may have violated Hain's constitutional rights. The only other allegation referencing a municipal employee is contained in paragraph 30 of the complaint, which states that a deputy in the sheriff's office "informed Plaintiff that her [LCF] would be reinstated if Plaintiff agreed to conceal her firearm in the future." (Id. ¶ 30.) As

Defendants' argue, this deputy's comment alone would not appear to have any bearing on her constitutional claims. Considering these allegations, the Court is not satisfied that they contain "sufficient factual matter" to show that this claim is facially plausible.

It is also suggested by the allegations in the complaint that Plaintiffs base their <u>Monell</u> claim on a failure of Lebanon County to train DeLeo himself in exercise of his duties as sheriff. Despite this, Plaintiffs also allege that DeLeo was the "primary legal official responsible for any policy and other decisions governing actions relevant to this matter . . . ." (<u>Id.</u> ¶ 7.) Plaintiffs therefore seem to claim that DeLeo is both an employee acting for the municipality and also a final policymaking official for the municipality. These positions are not clearly alleged in the alternative and are contradictory in asserting a claim under <u>Monell</u>. <u>See</u> <u>Board of Cnty. Comm'rs of Bryan Cnty., v. Brown</u>, 520 U.S. 397, 417 (1997) ("In assigning municipal liability under <u>Monell</u>, we accordingly distinguish an act of a municipal agent without independent authority to establish policy from the act of one authorized to set policy under local law, and we likewise distinguish the acts of lower level employees depending on whether they do or do not implement or manifest a policy set by those with the authority to set it. The act of the municipality is the act only of an authorized policymaker or of an employee following the policymaker's lead."). If DeLeo is merely an employee of Lebanon County, then his acts cannot be said to be official policy of the municipality. He would not have had "final, unreviewable discretion to make a decision or take an action." <u>Watson</u>, 478 F.3d at 155. Conversely, as Defendants point out, Plaintiffs would essentially claim DeLeo has failed to properly train and supervise himself if he is the final policymaking official in this area.

Unfortunately, Plaintiffs have utterly failed to respond to Defendants' arguments on these

points to clarify or support their position, stating solely, without elaboration: "Plaintiffs' complaint and as discussed above pleads Defendants' violation of Plaintiffs' Constitutional, *inter alia*, rights . . . ." (See Doc. No. 26 at 18.) The Court is not inclined to make arguments in support of sustaining these claims on behalf of the Plaintiffs. Considering Defendants' essentially uncontested arguments and the discussion above, the Court will dismiss these claims. As discussed further below, Plaintiffs will have an opportunity to cure the identified deficiencies with this claim.

### G. Leave to Amend

In civil rights cases, district courts must generally *sua sponte* extend plaintiffs an opportunity to amend the complaint before dismissal. Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). A district court can refuse to permit a curative amendment on grounds of bad faith, undue delay, prejudice, or futility. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

In this case, the Court suspects that granting leave to amend many of these claims may be futile. Despite this, considering the drastic procedural and legal developments in this case since the present motion was filed, the Court finds it appropriate under the circumstances to extend Plaintiffs leave to amend and cure the deficiencies in their complaint. Accordingly, Plaintiffs will be directed to submit either an amended complaint or notice that they intend to stand by the complaint as filed. See Phillips, 515 F.3d at 245.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss. Plaintiffs will be granted leave to amend their complaint to cure its deficiencies. An order consistent with

this memorandum will follow.[14]



[14] Though Defendants have also argued that several state law causes of action alleged in Plaintiffs' complaint are deficient, the Court will reserve ruling on those arguments until Plaintiffs have asserted a valid federal claim. If Plaintiffs cannot allege a valid federal claim, the Court will consider whether it should exercise supplemental jurisdiction over the pendant state law claims. <u>See</u> <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MELEANIE HAIN et al.,** | : | **Civil Action No. 1:08-CV-2136** |
| **Plaintiffs** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **MICHAEL J. DeLEO et al.,** | : | |
| **Defendants** | : | |

**ORDER**

    **AND NOW**, this 2nd  day of November 2010, upon consideration of the Defendants'

Motion to Dismiss (Doc. No. 7) filed in the above-captioned matter, and for the reasons set forth

in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the

motion is **GRANTED** as follows:

1.    Plaintiffs' claims based on the Second Amendment against Defendant DeLeo in his individual capacity are **DISMISSED**.

2.    Plaintiffs' claims based on the Fourteenth Amendment's Due Process Clause are **DISMISSED**.

3.    Plaintiffs' claims based on the Fourteenth Amendment's Equal Protection Clause are **DISMISSED**.

4.    Plaintiffs' claims based on conspiracy under 42 U.S.C. §§ 1985 and 1986 are **DISMISSED**.

5.    Plaintiffs' claims based on the Fourth Amendment are **DISMISSED**.

6.    Plaintiffs' claims based on Monell against Defendant DeLeo in his official capacity and the municipal Defendants are **DISMISSED**.

7.    Plaintiffs shall submit either an amended complaint or notice that they intend to stand on their complaint as filed within twenty (20) days of the date of this order.

                          s/ Yvette Kane
                          Yvette Kane, Chief Judge
                          United States District Court
                          Middle District of Pennsylvania